IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST )
AND SOUTHWEST AREAS PENSION )
FUND, and HOWARD McDOUGALL, )
Trustee, )
)
      Plaintiffs, )
)
v. ) No. 07 C 5220
)
O'NEILL BROS. TRANSFER & )
STORAGE CO., )
)
      Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central") and Plaintiff Howard McDougall ("McDougall") (collectively referred to as "Fund") allege that Central is a multi-employer pension plan as defined under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). McDougall is allegedly a trustee of Central. The Fund alleges that

Defendant O'Neill Bros. Transfer & Storage Co. ("O'Neill") was subject to one or more collective bargaining agreements under which O'Neill was required to make contributions to the Fund on behalf of certain of its employees. According to the Fund, on February 3, 2007, O'Neill effected a complete withdrawal from the Fund and ceased to have an obligation to contribute to the Fund. On February 8, 2007, counsel for O'Neill informed the Fund that O'Neill was "preparing for its termination and liquidation." (A. Compl. Par. 13). According to the Fund, the pension plan at issue ("Plan") provided that in the event of a liquidation or dissolution by an employer, the Fund could demand immediate and total discharge of liability owed to the Fund.

The Fund claims that, in accordance with 29 U.S.C. § 1381(b), O'Neill had a withdrawal liability of $1,263,855.07 and the Fund notified O'Neill of the liability in May 2007. In August 2007, the Fund allegedly notified O'Neill that the revised liability of O'Neill was $1,689,191.36. The Fund contends that O'Neill has failed to pay the monies owed to the Fund and has brought the instant action pursuant to provisions of ERISA. O'Neill now moves to dismiss this action.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint.

*Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has

3

explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

**DISCUSSION**

O'Neill argues that this action should be dismissed since the Fund failed to comply with this court's order issued on December 20, 2007 ("December 20 Order"), which granted Fund leave to file an amended complaint. O'Neill also argues that Fund has failed to state a valid claim in the amended complaint.

I.  Amendment of Complaint

O'Neill argues that the Fund failed to comply with the December 20 Order when the Fund filed the amended complaint. On November 5, 2007, O'Neill filed a motion to dismiss the original complaint, arguing that the Fund was improperly seeking a judgment on the merits. O'Neill contended that the Fund cannot obtain such relief until the parties follow alternate dispute resolution procedures. The Fund responded to the motion to dismiss indicating that it was not seeking a final judgment on the merits and the Fund acknowledged the potential for alternate dispute resolution procedures. The Fund contended that O'Neill's motion was based upon a "misreading and mis-characterization" of the complaint. (Ans. 1st Mot. 2). In the December 20 Order, we noted that certain allegations in the original complaint did

indicate that the Fund was seeking a final judgment on the merits and we ordered the Fund to file an amended complaint to clarify its position. O'Neill contends that the Fund, in its amended complaint, is still seeking full payment from O'Neill and that the Fund thus failed to comply with the December 20 Order. O'Neill requests that the court dismiss this action as a sanction for the Fund's non-compliance.

O'Neill contends that in the December 20 Order we "agreed that [the Fund] was not entitled to a payment of the entire amount of the alleged withdrawal liability pending the outcome of the applicable dispute resolution procedures, including arbitration." (Mem. 2nd Mot. 2). O'Neill points to the portion of the December 20 Order, in which we stated that "[w]e agree that the complaint contains certain allegations intimating that Plaintiff is seeking the relief objected to by Defendants." (12/20/08 OR 2). However, contrary to O'Neill's assertions, we made no legal findings concerning the Fund's rights to full payment or interim payments prior to the completion of alternate dispute resolution procedures. We merely indicated in the December 20 Order that the Fund believed that O'Neill's motion was based upon a misunderstanding on O'Neill's part, and we gave the Fund leave to amend the complaint to clarify its position. We gave the Fund an opportunity to restate its allegations in order to resolve the apparent misunderstanding and allow this case to proceed onward to discovery. We did not order the Fund to amend its complaint in any specific fashion. We stated that the Fund was ordered to file an amended complaint including allegations "consistent with the position taken by [the Fund] in its answer to the motion to dismiss" and "clarifying the relief sought by" the Fund.

(12/20/08 OR). The Fund has filed an amended complaint, clarifying its position that it is not seeking a judgment on the merits. The Fund also sufficiently explains why its amended complaint is consistent with its position in its response to O'Neill's original motion to dismiss. (Ans. 2nd Mot. 3-4). Therefore, the Fund did not violate the December 20 Order and we deny O'Neill's motion to dismiss this action as a sanction. Whether the Fund has stated a valid claim in its amended complaint is a separate matter, which will be addressed below.

II. Payment of Outstanding Withdrawal Liability in Full

O'Neill argues that the Fund's amended complaint is deficient because the Fund improperly seeks full payment of the alleged withdrawal liability. O'Neill contends that the Fund can only obtain interim payments, pending the outcome of alternate dispute resolution procedures. The Fund argues that it can obtain full payment at this juncture and that such payment will not bar O'Neill from pursuing alternate dispute resolution procedures. O'Neill points to 29 U.S.C. § 1399(c)(2), which provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." *Id.* O'Neill claims that the Fund has not put forth any payment schedule and thus no obligation on the part of O'Neill has arisen to make payments.

The Fund acknowledges that it did not put forth a payment schedule, but

argues that it is seeking relief under 29 U.S.C. § 1399(c)(5), which provides the following:

> In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term 'default' means–(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

*Id.* The Fund also specifically included allegations in the amended complaint, clarifying that it was seeking relief under 29 U.S.C. § 1399(c)(5). (A. Compl. Par. 11). As indicated above, pursuant to 29 U.S.C. § 1399(c)(5), "a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.* O'Neill argues that the immediate payment is inconsistent with the interim payment provision and with the fact that alternate dispute resolution procedures are pending. However, the interim payment provision is a separate form of relief available. The provision in 29 U.S.C. § 1399(c)(5) provides a separate form of relief to a plan sponsor specifically to address an "employer's withdrawal liability," when there is an "event defined in rules adopted by the [Plan] which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id.* There is no justification for ignoring the express language in 29 U.S.C. § 1399(c)(5) providing for immediate

7

and full payment of the outstanding amount in the event of a default. We will not assume, as O'Neill proposes, that Congress intended the provision to be disregarded or delayed if the parties are pursuing alternate dispute resolution procedures. There is no reason to conclude that payment under 29 U.S.C. § 1399(c)(5) should be treated any differently than the payment of interim payments under 29 U.S.C. § 1399(c)(2). O'Neill can still pursue arbitration and recover the funds paid to the Fund under 29 U.S.C. § 1399(c)(5).

The Seventh Circuit has recognized that a plan can obtain payments from an employer, pending the outcome of arbitration, and that the plan can bring a federal action to obtain payments. *See Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. The Fund Transport, Inc.*, 935 F.2d 114, 116 (7th Cir. 1991)(stating that "[w]hile the arbitration proceeds, the employer must either pay the whole sum or make periodic payments in an amount determined by the trustees" and that "[i]f the employer does not pay the sums demanded, the trust may file a civil action in federal court to collect"). Our conclusion that the Fund can seek full payment at this juncture under 29 U.S.C. § 1399(c)(5) is also consistent with the Seventh Circuit's admonition that during arbitration proceedings the pension fund should be the stake holder, pending the conclusion of alternate dispute resolution efforts. *Trustees*, 935 F.2d at 118-19. In fact, the Seventh Circuit has indicated that a fund should be the stake holder in instances where there is a "risk of non-payment," due to the insolvency of the employer. *Id.* The Seventh Circuit noted that "[p]ension trusts are solvent,

diversified, regulated institutions," and "[s]hort of a collapse comparable to 1929, funds will be able to repay any withdrawal liability that a court or arbitrator ultimately determines they should not have collected." *Id.* In the instant action, the Fund alleges in the amended complaint that on February 8, 2007, counsel for O'Neill informed the Fund that O'Neill "was 'preparing for its termination and liquidation.'" (A. Compl. Par. 13). O'Neill does not contest this fact or provide any assurances concerning its solvency. In addition, the Plan specifies that "[a] default occurs if . . . the Trustees, in their discretion, deem the Fund insecure as a result of . . . events," including "the Employer's insolvency." (D Ex. C Sec. 5(e)(2)(A)). The Plan also specifies that in the event of such a default the "outstanding amount of the withdrawal liability shall immediately become due and payable." (D Ex. C Sec. 5(e)(2)(A)). Thus, the risk of non-payment by O'Neill, represented by its intended liquidation and potential insolvency constitutes an "event defined in rules adopted by the [Plan] which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5). Pursuant to 29 U.S.C. § 1399(c)(5), the Fund is entitled to pursue the full outstanding amount of the withdrawal liability, pending the outcome of alternate resolution proceedings. O'Neill has failed to show that the relief sought in the Fund's amended complaint is improper. Therefore, we deny O'Neill's motion to dismiss.

We note that O'Neill also argues that the Plan is not automatically owed the outstanding withdrawal liability based on the allegations in the amended complaint. O'Neill argues that "[a] plaintiff must still prove it is entitled to the enforcement of

9

an acceleration clause prior to receiving any award based thereon." (Reply 3). However, all that is before us at this juncture is whether the Fund has stated a valid claim, which it has. The merits of the Fund's claim in the amended complaint are not before the court at this juncture.

## CONCLUSION

Based on the foregoing analysis, we deny O'Neill's motion to dismiss.

                                                  Samuel Der-Yeghiayan
                                                  United States District Court Judge

Dated: April 2, 2008