# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS PENSION | ) | |
| FUND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 5220 |
| | ) | |
| O'NEILL BROS. TRANSFER & | ) | |
| STORAGE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Central States, Southeast and Southwest Areas Pension Fund's and Howard McDougall's (collectively referred to as "Central") motion for reconsideration. This matter is also before the court on Defendant O'Neill Bros. Transfer & Storage Co.'s (O'Neill) motion for reconsideration. Based on the foregoing analysis, we grant Central's motion for reconsideration and deny O'Neill's motion for reconsideration.

1

# BACKGROUND

Central is a multi-employer pension plan as defined under the Employee
Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). O'Neill
was subject to one or more collective bargaining agreements under which O'Neill
was required to make contributions to the pension plan on behalf of certain of its
employees. According to Central, on February 3, 2007, O'Neill effected a complete
withdrawal from the pension plan and ceased to have an obligation to contribute to
the plan. On February 8, 2007, counsel for O'Neill informed Central that O'Neill
was "preparing for its termination and liquidation." (A. Compl. Par. 13). According
to Central, the pension plan provided that in the event of a liquidation or dissolution
by an employer, the plan could demand immediate and total discharge of liability
owed to the plan. Central contends that O'Neill has failed to pay the monies owed to
the pension plan and has brought the instant action pursuant to provisions of ERISA.
On April 1, 2009, we granted Central's motion for summary judgment. Central now
seeks certain technical amendments to the final judgment. O'Neill seeks to challenge
the substantive basis for the April 1, 2009, ruling and asks the court to vacate the
ruling.

# LEGAL STANDARD

A party can move to alter or amend a judgment pursuant to Federal Rule of

Civil Procedure 59(e) (Rule 59(e)).  However, Rule 59(e) motions do not give a party

the opportunity to rehash old arguments or to present new arguments or evidence

"that could and should have been presented to the district court prior to the

judgment."  *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)(citing *LB Credit*

*Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)).  Rather, for a

Rule 59(e) motion, the movant "'must clearly establish either a manifest error of law

or fact or must present newly discovered evidence'" in order to be successful.  *LB*

*Credit Corp.*, 49 F.3d at 1267 (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781

F.2d 1260, 1268 (7th Cir. 1986)).


# DISCUSSION

## I.  O'Neill's Motion for Reconsideration

O'Neill argues that the court erred in granting Central's motion for summary

judgment and in denying O'Neill's request for the return of its interim payment and

its request for attorneys' fees.

A.  Reinstatement of Motion for Summary Judgment

O'Neill contends that the court improperly reinstated Central's motion for summary judgment sua sponte and that O'Neill was not given an opportunity to address the summary judgment issues before the court ruled.  O'Neill requests that the court give O'Neill "the opportunity to fully brief all matters relating to summary judgment."  (O Recon. 12).  On October 21, 2008, we denied Central's motion for summary judgment, but we merely denied the motion without prejudice since the parties had not provide the court with sufficient information at that juncture.  (10/21/08 OR 2).  On April 22, 2009, we reinstated Central's motion for summary judgment and granted the motion for summary judgment.  In reinstating the motion for summary judgment we recognized that "'a district court can enter summary judgment *sua sponte,* or on its own motion, under certain limited circumstances'" and that "'granting summary judgment *sua sponte* warrants special caution' and generally requires that the party against whom summary judgment is entered have notice and an opportunity to present its evidence."  *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 461-62 (7th Cir. 2009)(quoting in part *Simpson v. Merchs. Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999)).  In entering judgment in favor of Central, we granted a motion filed by Central.  We did not decide to enter summary judgment sua sponte without briefing by the parties and thus, as in *Golden*

*Years*, the ruling cannot "be characterized as purely sua sponte." *Id.* Central filed a

motion for summary judgment, providing O'Neill with notice of Central's arguments

and the motion was fully briefed by the parties prior to the October 21, 2008, ruling.

O'Neill was not denied an opportunity to present its positions in this case. In

addition to the briefs for the summary judgment motion, both parties were given

opportunities to file additional memorandums since October 21, 2008. Finally,

O'Neill now argues that it was technically denied the right to inform the court of

circumstances that may have changed since the October 21, 2008, ruling that would

impact on Central's motion for summary judgment. However, O'Neill fails in its

motion for reconsideration to reference any new circumstances or evidence that

would warrant the denial of Central's motion for summary judgment. O'Neill has

failed to point to any issues relating to Central's motion for summary judgment that

have not been briefed by the parties. O'Neill refers only vaguely to potential "new

facts" that may be relevant for the summary judgment ruling. (O Recon. 12). Thus,

O'Neill has not shown that granting of Central's motion for summary judgment was

improper. *See Golden Years Homestead, Inc.*, 557 F.3d at 462 (stating that ruling

was not truly sua sponte since the issues were addressed by the parties, the plaintiff

had an opportunity to weigh in on the issues, and the plaintiff had "not identified any

significant evidence that it omitted").

<u>B.  Finding of Default and Compliance with Act</u>

O'Neill argues that the court improperly granted Central's motion for summary judgment since only after a default by O'Neill could the court enter summary judgment in favor of Central.  However, in granting Central's motion for summary judgment, we found that O'Neill was in default.  The basis of Central's claims in this case and its request for summary judgment seeking an award of outstanding liability, was the payment of outstanding liability based upon a default by O'Neill under 29 U.S.C. § 1399(c)(5).  (SJ 2-3)(A Compl. Par. 11-20).  Central has shown,  based on the undisputed facts included with its motion for summary judgment and the entirety of the record in this case, that O'Neill was in default, that Central presented O'Neill with a proper demand, that O'Neill has rejected Central's demand and proposed payment schedule and that Central is now entitled to an immediate payment of all outstanding withdrawal liability.  Central had provided O'Neill with a proper demand for payment in compliance with ERISA prior to bringing this action.  The Revised Payment Schedule provided to O'Neill by Central gave O'Neill an opportunity to pay what O'Neill owed to Central pursuant to a periodic payment schedule instead of a lump sum payment.  *See Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund*

*v. Central Transport, Inc.*, 935 F.2d 114, 116 (7th Cir. 1991)(stating that "[w]hile the arbitration proceeds, the employer must either pay the whole sum or make periodic payments in an amount determined by the trustees"); *see also Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 208 (1997)(recognizing that for defaults under 29 U.S.C. § 1399(c)(5), "a plan has the option to accelerate and collect the entire debt if the employer defaults" and stating that "[t]rustees confronting a delinquent employer may accelerate if they decide such a course is in the best interests of the plan, but they need not do so to preserve the plan's right to recover future payments"); *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 602 (7th Cir. 2008)(stating that acceleration under 29 U.S.C. § 1399(c)(5)(A) "is permissive, not mandatory"); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)(stating that "[c]ourts in the majority of circuits have held that ERISA empowers a court to order the making of interim withdrawal liability payments").

C.  Rejection of Payment Schedule

O'Neill argues that the court erred in concluding that O'Neill had rejected the payment schedule proposed by Central.  On October 21, 2008, pursuant to Seventh Circuit precedent in *Trustees of Chicago Truck Drivers, Helpers and Warehouse*

*Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114

(7th Cir. 1991), we gave Central an opportunity to indicate to the court whether

Central was willing to formulate a multi-payment schedule and to provide O'Neill

with a payment schedule consisting of multiple payments, as determined by Central.

Central provided a payment schedule, but improperly included past due dates in the

schedule and on February 19, 2009, we gave Central another opportunity to provide

O'Neill with a payment schedule. Central then proposed a revised payment schedule

with payments beginning on future dates (Revised Payment Schedule). O'Neill

contends that it never rejected Central's Revised Payment Schedule. (O Recon. 6).

O'Neill also argues that under 29 U.S.C. § 1399(c)(2) it has 60 days after it received

a payment schedule before it can be forced to make payments. O'Neill argues that

the court did not accord O'Neill 60 days after O'Neill was presented with the

Revised Payment Schedule before granting Central's motion for summary judgment.

However, prior to the filing of this action, O'Neill was presented with a proper

demand and O'Neill's liability was already triggered prior to the filing of this action

pursuant to 29 U.S.C. § 1399(c)(5). In addition, on February 19, 2009, we gave

O'Neill until March 16, 2009, to indicate whether O'Neill was willing to make

periodic payments consistent with the Revised Payment Schedule. O'Neill never

filed any document with the court by March 16, 2009, to indicate that it would accept

and comply with the Revised Payment Schedule. O'Neill in fact has yet to make such a representation to the court and in O'Neill's motion for reconsideration it acknowledges that it "objected to the Revised Payment Schedule. . . ." (O Recon. 4). If O'Neill was going to accept the Revised Payment Schedule, it would have been incumbent on O'Neill to notify the court in accordance with the schedules set forth in the February 19, 2009, order. The entry of summary judgment in this case was not contrary to the 60-day deadline following a proper demand as provided in 29 U.S.C. § 1399(c)(5). When O'Neill, as requested by the court, did not indicate to the court that it affirmatively would accept the Revised Payment Schedule, and when O'Neill even objected to the Revised Payment Schedule, O'Neill in effect did not accept the Revised Payment Schedule. This was not a situation where there was a revised payment schedule in place and the obligor missed a payment. *See Chicago Truck Drivers*, 525 F.3d at 602 (7th Cir. 2008)(stating that "[b]efore an employer can be held to have defaulted on a missed payment, there must be notice and a sixty-day opportunity to cure"). Also, to the extent that Central would need to provide a payment schedule to O'Neill Central did so. As Central pointed out in its reply in support of its motion for summary judgment, under the statutory framework of 29 U.S.C. § 1399 regarding the computation of a "schedule," nothing requires a "schedule" to consist of multiple payments, a single payment is possible in several

instances, and a single payment is consistent with the provisions of 29 U.S.C. §

1399.  (SJ Reply 2-3).  Central also properly distinguished *Central States, Southeast*

*and Southwest Areas Pension Fund v. Basic American Industries, Inc.*, 252 F.3d 911

(7th Cir. 2001) and *Chicago Truck Drivers, Helpers and Warehouse Union*

*(Independent) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526 (7th Cir.

1997) from the instant action, explaining why the cases are not on point.  (SJ 4-7);

*see also Trustees*, 935 F.2d at 118-19 (explaining that "[a]lthough [a] trust bears

substantial risk if the employer holds the stakes pending final resolution, the

employer faces no corresponding risk if the fund holds the stakes" since "[p]ension

trusts are solvent, diversified, regulated institutions"); *Bowers v. Transportacion*

*Maritima Mexicana, S.A.*, 901 F.2d 258, 265 (2d. Cir. 1990)(stating that for a default

under 29 U.S.C. § 1399(c)(5) "the Fund was entitled to require immediate payment

of the entire withdrawal liability amount demanded plus interest").  Thus, the court

properly found that O'Neill had rejected the demand of Central, rejected the Revised

Payment Schedule, and that O'Neill owes an immediate payment to Central of all

outstanding withdrawal liability.


 D.  Cessation of Business and Liquidation

 O'Neill also contends that the court improperly based its ruling on summary

judgment on recent statement by Central that O'Neill had ceased doing business and liquidated its assets. However, the recent statement by Central was not the deciding factor for the court's granting Central's motion for summary judgment. We granted Central's motion for summary judgment based on the totality of the record before the court. Based on all of the filings by the parties in this case, it was clear as a matter of law that Central was entitled to the relief it sought. In addition, as a matter of equitable considerations, it was prudent to order an immediate full payment of outstanding withdrawal liability. *See, e.g., Debreceni v. Merchants Terminal Corp.*, 889 F.2d 1, 6 (1st Cir. 1989)(recognizing that there is potential discretion for a court to consider the equities in another situation involving hardship on the employer). Therefore, based on the above, we deny O'Neill's motion for reconsideration.

### E.  Return of Interim Payment

O'Neill contends that the interim payment it made to Central should be returned to O'Neill.  O'Neill claims that it made an interim payment to Central in the amount of $13,909.41.  O'Neill contends that Central failed to provide O'Neill with a proper payment schedule and thus the interim payment should be returned to O'Neill.  However, as explained above, O'Neill was presented with a proper demand and schedule.  In any event, Central indicates in its motion for reconsideration that it

has now adjusted the amount sought by Central to credit O'Neill for the interim payment. (A. O. Recon. 7 n.2). Thus, O'Neill's argument is moot since the amount of liability has been adjusted by Central to credit O'Neill for the interim payment.

F.  Attorneys' Fees

O'Neill argues in its motion for reconsideration that the court erred in denying O'Neill's request for attorneys' fees since O'Neill should have prevailed in this case. However, O'Neill has not shown that the court erred in granting Central's motion for summary judgment and has not shown that O'Neill should have prevailed in this case or that it is entitled to attorneys' fees. Therefore, we deny O'Neill's motion to reconsider the court's decision denying O'Neill's request for an award of attorneys' fees.

O'Neill was provided with a demand for payment by Central on May 17, 2007, over two years ago. (A. Compl. Par. 10). O'Neill has been given ample opportunity to pay in full its withdrawal liability to Central and O'Neill has even been given the opportunity to make payments in accordance with a multiple payment schedule. O'Neill has failed to pay Central in accordance with 29 U.S.C. § 1399 and there is no just reason to delay payment any longer, particularly in light of the fact that O'Neill has ceased doing business and has liquidated its assets. As explained in

our prior ruling, it is now time for O'Neill to pay to Central the amounts owed. Therefore, for the reasons stated above, we deny O'Neill's motion for reconsideration.

II.  Central's Motion for Reconsideration

Central does not oppose the substantive ruling on its motion for summary judgment and instead merely seeks certain technical amendments to the final judgment.  O'Neill has objected to the calculation of interest and liquidated damages. However, O'Neill has not presented sufficient evidence to reject the calculations presented by Central.  Central requests that the final judgment entered in this case be amended to include the following amounts: (1) delinquent interim withdrawal liability payments in the amount of $1,689,191.36, (2) interest in the amount of $216,499.40, and (3) liquidated damages in the amount of $337,838.27.  Central seeks an amended total award of $2,243,529.03.  Such awards are recoverable under 29 U.S.C. § 1132(g) and the terms of the pension plan at issue in this case and we also find that they are reasonable.  Central has properly based the interest and liquidated damages calculation on the delinquency of payments.  The amounts are properly calculated by Central and we grant Central's motion for reconsideration and amend the judgment and award Central a total of $2,243,529.03.

## CONCLUSION

Based on the foregoing analysis, we deny O'Neill's motion for reconsideration and we grant Central's motion for reconsideration.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:  May 27, 2009